**UNITED STATES DISTRICT COURT**

**SOUTHERN DISTRICT OF CALIFORNIA**

FERNANDO ALFONSO VALENTE FERNANDEZ,

Petitioner,

v.

WARDEN OF OTAY MESA DETENTION CENTER, et al.,

Respondents.

Case No.: 3:26-cv-03683-RBM-SBC

**ORDER GRANTING AMENDED PETITION FOR WRIT OF HABEAS CORPUS**

**[Doc. 6]**

Pending before the Court is Petitioner Fernando Alfonso Valente Fernandez's ("Petitioner") Amended Petition for Writ of Habeas Corpus ("Amended Petition"). (Doc. 6.) For the reasons set forth below, the Amended Petition (Doc. 6) is **GRANTED**.

## I. BACKGROUND

Petitioner, a citizen of Venezuela, entered the United States seeking asylum on or around September 22, 2023. (Doc. 6 at 4.) Petitioner was arrested and detained "almost immediately." (*Id.*) After four days in detention, U.S. Immigration and Customs Enforcement ("ICE") released Petitioner from custody. (*Id.*) After his release, Petitioner was issued a social security number, a valid work permit, and a driver's license. (*Id.*)

On May 18, 2026, Petitioner was re-detained "by six or seven armed, masked ICE

agents . . . at a Chevron gas station in the San Marcos/Escondido area of San Diego County." (*Id.*) Despite showing the ICE agents his social security card, work permit, and driver's license, ICE took Petitioner into custody and obtained his fingerprints and biographical information. (*Id.*) After being detained for about five or six hours, Petitioner was "released and informed that he had to appear in immigration court in San Diego on May 20, 2026." (*Id.*) Petitioner "told the ICE agents that he could not appear in San Diego on May 20, 2026, because he had a hearing in Chicago, IL, on May 26, 2026." (*Id.*) Petitioner attended his immigration hearing in Chicago on May 26, 2026, but did not appear for his immigration hearing in San Diego on May 20, 2026. (*Id.*)

On May 20, 2026, Petitioner learned he had been ordered removed through the EOIR mobile application. (*Id.*) Petitioner appealed the immigration judge's ("IJ") removal order with the Board of Immigration Appeals ("BIA") on June 29, 2026, and his appeal remains pending. (*Id.* at 6.)

On June 6, 2026, Petitioner was re-detained as he "was getting ready to leave his apartment complex's parking lot for work." (*Id.*) "When he asked the agents why he was being arrested again, he was told it was because there was a removal order filed in his case." (*Id.*) Petitioner "was not shown any paperwork authorizing his arrest, nor was he told that he had a right to see an immigration judge prior to being detained again." (*Id.*) Instead, Petitioner was "told that he had no right to see a judge, and that he had to go with them." (*Id.*) "On June 7, 2026, without seeing an immigration judge to contest the detention, [Petitioner] was transported to" the Otay Mesa Detention Center. (*Id.*)

On June 23, 2026, Petitioner, proceeding *pro se*, commenced this action by filing a Petition for Writ of Habeas Corpus Under 28 U.S.C. § 2241 ("Petition"). (Doc. 1.) The Court referred the Petition to Federal Defenders of San Diego, Inc. for evaluation. (Doc. 4 at 1.) Pursuant to Chief Judge Order 134-A, Federal Defenders referred this case for representation by CJA Panel attorney, Heather L. Beugen. (Doc. 8 at 1; *see* Doc. 9.) On July 31, 2026, Petitioner, by and through counsel filed the Amended Petition. (Doc. 6.)

Pursuant to this Court's Order (*see* Doc. 9), Respondents filed a Response on August

14, 2026. (Doc. 10.) Petitioner filed a Traverse on August 26, 2026 (Doc. 11), along with a Request to Excuse Counsel's Late Filing of the Traverse (Doc. 13).[1]

## II. LEGAL STANDARD

A writ of habeas corpus is "available to every individual detained within the United States." *Hamdi v. Rumsfeld*, 542 U.S. 507, 525 (2004) (citing U.S. Const., Art. I, § 9, cl. 2). "The essence of habeas corpus is an attack by a person in custody upon the legality of that custody, and . . . the traditional function of the writ is to secure release from illegal custody." *Preiser v. Rodriguez*, 411 U.S. 475, 484 (1973). "Writs of habeas corpus may be granted by the Supreme Court, any justice thereof, the district courts and any circuit judge within their respective jurisdictions." 28 U.S.C. § 2241(a). The petitioner bears the burden of demonstrating that "[h]e is in custody in violation of the Constitution or laws or treaties of the United States." *Id.* § 2241(c)(3).

## III. DISCUSSION

Petitioner claims his immigration detention violates the Administrative Procedures Act and the Fifth Amendment's Due Process Clause because ICE failed to comply with its own regulations in revoking his parole under 8 C.F.R. § 212.5. (Doc. 6 at 6.) Respondents argue that Petitioner is properly detained under 8 U.S.C. §1231 because he was ordered removed *in absentia* and is therefore subject to a final order of removal. (Doc. 10 at 2.)

As the statutory provision governing Petitioner's detention determines what procedures Respondents must follow, the Court will address this issue first.

### A. Detention Authority

"Section 1226(a) . . . applies only while 'a decision on whether the [noncitizen] is to be removed from the United States' is 'pending'. . . ." *Padilla-Ramirez v. Bible*, 882 F.3d 826, 831 (9th Cir. 2017) (quoting 8 U.S.C. § 1226(a)). "Once [a noncitizen] has a final removal order that is not subject to a judicial stay, detention authority shifts to 8 U.S.C.

---

[1] For good cause shown, the Court **GRANTS** Petitioner's Request to Excuse Counsel's Late Filing (Doc. 13) and considers the Traverse timely filed.

§ 1231(a)." *Rodriguez Diaz v. Garland*, 53 F.4th 1189, 1197 (9th Cir. 2022). Section 1231(a) "governs the detention, release, and removal of individuals 'ordered removed.'" *Johnson v. Arteaga-Martinez*, 596 U.S. 573, 578 (2022). This statute directs the Attorney General of the United States to effect the removal of a noncitizen from this country "within a period of 90 days," also known as the "removal period." 8 U.S.C. § 1231(a)(1)(A). Section 1231 defines the "removal period" within which the government "shall detain [a noncitizen]" as a 90-day period beginning on the latest of:

> (i) The date the order of removal becomes administratively final.
>
> (ii) If the removal order is judicially reviewed and if a court orders a stay of the removal of the [noncitizen], the date of the court's final order.
>
> (iii) If the [noncitizen] is detained or confined (except under an immigration process), the date the [noncitizen] is released from detention or confinement.

8 U.S.C. § 1231(a)(1)(B). Noncitizens who are inadmissible "may be detained beyond the [90-day] removal period," but § 1231 does not mandate their detention. *Id.* § 1231(a)(6). Instead, the statute is limited to "a period reasonably necessary to bring about [the noncitizen's] removal from the United States" and "does not permit indefinite detention." *Zadvydas v. Davis*, 533 U.S. 678, 689 (2001).

When a removal order is entered *in absentia*, the order becomes administratively final immediately upon entry of the order. 8 C.F.R. § 1241.1(e). The Ninth Circuit, however, has held that an *in absentia* removal order becomes final upon the earlier of: (1) the expiration of the 180-day period to file a motion to reopen; or (2) when the BIA affirms the order. *Cui v. Garland*, 13 F.4th 991, 996 (9th Cir. 2021). "Because *in absentia* removal orders may not be appealed to the BIA without first filing a motion to reopen the order before the IJ within 180 days of the order, . . . if the petitioner does not timely file such a motion before the IJ[,] the order becomes final at the end of the 180-day period." *Id.* (internal citations omitted)).

In this case, Petitioner was ordered removed *in absentia* on May 20, 2026. (*See* Doc.

6 at 5.) The 180-day period will therefore expire on November 16, 2026. Although Petitioner appealed the IJ's removal order with the BIA on June 29, 2026, nothing in the record indicates that Petitioner has moved to reopen his immigration case before the IJ. (*See* Doc. 12, Ex. A at 1.) However, because the 180-day period has not yet passed, Petitioner's *in absentia* removal order has not become administratively final. Accordingly, Petitioner's detention not governed by § 1231(a)(6). *See Singh v. Warden of Golden State Annex Facility*, No. 1:26-CV-04514-KES-FJS (HC), 2026 WL 2078193, at *2 (E.D. Cal. July 18, 2026) (finding an *in absentia* removal order was not final where the 180-day period to file a motion to reopen with the IJ had not expired).

**B. Due Process**

Petitioner contends that his re-detention violated the Fifth Amendment's Due Process Clause because "Respondent did not provide 'proper notice, reasoning, and a pre-deprivation hearing' before ICE agents unilaterally revoked [his] parole." (Doc. 6 at 10.) Respondents do not address these arguments. (*See generally* Doc. 10.)

This Court has granted several habeas petitions filed by similarly situated petitioners who were released from ICE detention on humanitarian or conditional parole and later re-detained. In *Perez v. LaRose*, the Court applied the due process inquiry in *Mathews v. Eldridge*, 424 U.S. 319 (1976) and found "all three factors support a finding that Respondents' revocation of Petitioner's parole [§ 1182(d)(5)(A)] without reasoning or an opportunity to be heard deprived Petitioner of his due process rights." Case No.: 3:25-cv-02620-RBM-JLB, 2025 WL 3171742, at *5 (S.D. Cal. Nov. 13, 2025); *see also Faizyan v. Casey*, Case No.: 3:25-cv-02884-RBM-JLB, 2025 WL 3208844, at *7 (S.D. Cal. Nov. 17, 2025) (reaching the same conclusion as to the revocation of a petitioner's conditional parole under § 1226(a)); *Chirnos De Hernandez v. LaRose*, Case No. 3:26-CV-03629-RBM-SBC (S.D. Cal., Aug. 4, 2026), ECF No. 7 at 4–6 (finding a due process violation where the petitioner was released under an unspecified form of parole); *accord Wang v. LaRose*, Case No.: 3:26-cv-01130-BTM-BJW, 2026 WL 773085, at *2 3 (S.D. Cal. Mar. 18, 2026) (finding a petitioner's release on an unspecified form of parole created a

protectable liberty interest even where the record did not reflect the government's reason for granting parole). The Court concluded the petitioner's detention was unlawful "because Respondents detained [the petitioner] by revoking his parole in violation of the Due Process Clause." *Perez*, 2025 WL 3171742, at *5.

"While the *in absentia* order of removal may be relevant to a neutral decisionmaker's determination as to whether petitioner is entitled to bond, it does not eliminate petitioner's due process right to a such determination." *Singh*, 2026 WL 2078193, at *2 (citing *E.A. T.-B. v. Wamsley*, 795 F. Supp. 3d 1316, 1322 (W.D. Wash. 2025)).

In this case, Petitioner was apprehended upon his arrival to the United States in September 2023 and released from his initial detention on parole. (*See* Doc. 1 at 1–2 & n.2.) Petitioner was later re-detained in May 2026 and once again released from ICE custody. (*See id.* at 5.) While the Government's reasons for releasing Petitioner in September 2023 and May 2026 remain unclear, "[r]elease reflects a determination by the government that the noncitizen is not a danger to the community or a flight risk." *Saravia v. Sessions*, 280 F. Supp. 3d 1168, 1176 (N.D. Cal. 2017); *see Pinchi v. Noem*, 792 F. Supp. 3d 1025, 1034 (N.D. Cal. 2025) ("As ICE was not authorized to release [Petitioner] if [he] was a danger to the community or a flight risk, the Court must infer from [Petitioner's] release that ICE determined [he] was neither.").

Before he was re-detained in June 2026, Petitioner lived in the United States for over two years, was able to apply for immigration relief, was granted work authorization, maintained steady employment, and "has remained law-abiding." (Doc. 1 at 4–5.) Respondents therefore implicitly promised Petitioner's continued release, and he reasonably relied on that promise. *See Pinchi*, 792 F. Supp. 3d at 1034 (citing *Morrissey v. Brewer*, 408 U.S. 471, 482 (1972)); *Wang*, 2026 WL 773085, at *2. "Since DHS's initial determination that Petitioner should be paroled because [he] posed no danger to the community and was not a flight risk, there is no evidence that these findings have changed." *Salazar v. Casey*, Case No.: 25-CV-2784 JLS (VET), 2025 WL 3063629, at *4 (S.D. Cal. Nov. 3, 2025). Petitioner also alleges, and Respondents do not dispute, that he was not

provided with an individualized determination or an opportunity to be heard before he was re-detained. (*See* Doc. 1 at 5–6; *see generally* Doc. 10.) Respondents therefore "violated . . . Petitioner's due process rights by 'detaining [him] without justification.'" *Zamudio Rangel v. LaRose*, Case No.: 3:26-cv-01505-BTM BJW, 2026 WL 1075244, at *2 (S.D. Cal. Apr. 20, 2026) (quoting *Mohammed H. v. Trump*, 786 F. Supp. 3d 1149, 1158 (D. Minn. 2025)) (finding a petitioner previously released under an unspecified form of parole was entitled to release where "Respondents [did] not contend that any changed circumstances warranted Petitioner's redetention or that [she was] a danger to the community or a flight risk.")

The Court therefore adopts its reasoning in its previous cases and applies it here. *See Perez*, 2025 WL 3171742, at *5; *Faizyan*, 2025 WL 3208844, at *7; *Chirnos De Hernandez*, Case No. 3:26-CV-03629-RBM-SBC (S.D. Cal., Aug. 4, 2026), ECF No. 7 at 4–6. For those same reasons, Petitioner's re-detention without a pre-deprivation or bond hearing violated the Due Process Clause of the Fifth Amendment and rendered his detention unlawful.[2]

## IV. CONCLUSION

Based on the foregoing reasons, the Court orders as follows:

1. Petitioner's Request to Excuse to Excuse Counsel's Late Filing (Doc. 13) is **GRANTED**..
2. The Amended Petition (Doc. 6) is **GRANTED**.
3. The Government is **ORDERED** to immediately release the noncitizen from custody, subject to the same preexisting conditions of release.
4. The Court **ORDERS** that, prior to any re-detention of the noncitizen, the noncitizen shall receive notice of the reasons for revocation of her release and a hearing before an immigration judge to determine whether detention is

[2] In light of the disposition herein, the Court declines to address the Petition's remaining grounds for relief.

warranted.

5. At any such hearing, the noncitizen bears the burden of demonstrating, by a preponderance of the evidence, that she is not a danger to the community or a flight risk. *See Rodriguez Diaz v. Garland*, 53 F.4th 1189, 1197 (9th Cir. 2022).

**IT IS SO ORDERED**.

DATE: September 1, 2026

HON. RUTH BERMUDEZ MONTENEGRO
UNITED STATES DISTRICT JUDGE